Ternes v. Giles.

No. 19,041.

MARY TERNES, *Appellee,* v. JOHN T. GILES, *Appellant.*

SYLLABUS BY THE COURT.

AUTOMOBILE — *Collision with Buggy — Negligence — Personal Injuries.* The principles of law applicable in an action for damages caused by a collision between an automobile and a carriage and horse, stated in paragraphs 2, 3 and 4 of the syllabus in *Giles v. Ternes,* ante, p. 140, 143 Pac. 491, are followed in an action by the wife of the driver of the carriage for her injuries suffered in the same collision.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed December 12, 1914. Affirmed.

*William Keith,* and *Dempster O. Potts,* both of Wichita, for the appellant.

*E. L. Foulke, C. A. Matson,* and *J. D. Wall,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment for damages caused by a collision between an automobile and a carriage and horse.

In a former action brought by the defendant, owner of the automobile, against John P. Ternes, the plaintiff's husband, the defendant recovered damages on a counterclaim for loss of his wife's services and for injuries to his horse and carriage. (*Giles v. Ternes,* ante, p. 140, 143 Pac. 491.) In this action the wife sued for damages for pain and suffering and physical disfigurement. The circumstances of the collision are stated in the report of the first case and need not be detailed here.

The charges of negligence, briefly stated, are that the defendant drove his car in the nighttime, at an unlawful speed, and without sufficient lights, out of the traveled roadway into the plaintiff's conveyance, thereby throwing her to the ground and causing the injuries for which damages are asked. The jury returned findings as follow:

"Q. 1. Was defendant driving his automobile at a rate of speed exceeding twenty miles per hour when the collision occurred? A. No.

"Q. 2. Did defendant exhibit on the automobile he was driving at the time of the collision, one or more lamps showing white lights unobstructed and visible within a reasonable distance in the direction towards which the automobile was proceeding? A. Yes.

"Q. 3. Was it dark at the time and place of collision? A. Yes.

"Q. 4. Was defendant driving his automobile in a careful and prudent manner at the time and place of collision? A. Yes.

"Q. 6. Did defendant see or know of the approach of the buggy in which plaintiff was riding, before the collision occurred? A. No.

"Q. 7. Did the conveyance in which plaintiff was riding exhibit or show any lights or warning signals, at the time of the collision ? A. No.

"Q. 8. Did plaintiff see the lights exhibited on defendant's automobile, before the collision occurred? A. Yes.

"Q. 9. If you answer question No. 8 in the affirmative, state whether or not there was sufficient time and a safe place for the driver of the conveyance in which plaintiff was riding, to have avoided the collision by

turning out to one side of the road, or otherwise? A. Yes.

"Q. 10. If you answer question No. 8 in the affirmative, state whether or not plaintiff, after seeing said lights and before the collision, advised or suggested to her husband that he be more cautious, or did she make any effort to avoid a collision with the vehicle displaying said lights? A. No.

"Q. 1. (By plaintiff.) Did the plaintiff and her husband upon seeing the light of defendant's automobile turn out of the beaten path or roadway to the right? A. Yes."

A motion for judgment on the findings was overruled, and judgment was rendered on the verdict for the plaintiff for $100. Error is assigned upon this ruling, and upon the instructions.

It will be observed that the findings negative any want of care on the part of the defendant except in relation to lights, and the failure to turn out on approaching the plaintiff's carriage. The evidence and instructions pertinent to these matters must therefore be considered. The following instruction was given:

"If you find that when the plaintiff and the defendant were approaching each other on the highway in question, the plaintiff turned to the right of the center of the highway and the defendant did not turn to his right of the center of the highway but that part or all of his automobile was to the south of the center of the highway, and that the collision between the plaintiff and the defendant occurred to the south of the center of the highway, and that by reason of the defendant's being south of the center of the highway the collision took place and the plaintiff was injured, then you are instructed that such act by the defendant constituted negligence on his part. The center of the highway as used in these instructions means the center of the well-beaten track or roadway."

From plaintiff's testimony it appeared that while traveling east in her carriage about 10 o'clock at night she noticed the lights of an automobile approaching from that direction. Her husband, who was driving, turned to the right. After the automobile passed on

to the west she noticed other lights approaching, and the carriage was again turned to the right until the right-hand wheels were in the ditch. She also said that the car came upon them "in an angling direction to the southwest." Her husband testified:

"As soon as I saw the light I turned out of the road to the right and to the South. I turned out when I saw the first light. After a little I saw another dim light. All at once as it was just a short distance from me I seen it was an automobile and I hollowed to him if he couldn't see us; by that time he just crashed into us. The automobile struck our buggy right back of the front wheel on the side. The left hand side of the automobile striking my front wheel back of the hub. My wife fell on the hood of the car and the collision jerked me on the other side of the ditch, in the grass there. I got up and saw Mr. Giles there, and I said, 'Is that you, Mr. Giles?' and he said, 'Yes.' I said 'An old man like you ought not to go out with such lights on a car.' And he said, 'I know, the other lights got out of fix, ain't got them fixed yet.' And he said, 'I know it is my fault, but can't help it now,' and he said, 'With your white clothes on I thought that was the road.' I examined the location of the accident next morning and could distinguish the tracks of my buggy at that time. I would judge that I turned out of the road a distance of 100 feet west of the point of the accident. I could also see the automobile tracks the next morning. The left front wheel of the automobile went right in the ditch, made a big gash in the ditch. I followed these tracks back where the automobile turned out of the road, and I think that it was about 25 or 30 feet from the ditch to the point of the road where the automobile turned out. The automobile was facing southwest when it stopped. The automobile track was pretty gradual turnout until it got pretty close to us. All at once he made a pretty sharp turn towards the buggy."

It appears from the evidence of the defendant that there was a coal-oil light on each side of his automobile, but the headlights were not burning, being out of order. He testified:

"I would say that I was traveling at the rate of 6 or 7 miles an hour when the collision occurred. I did n't see the rig in which plaintiff was riding before the

collision occurred. The first intimation I had was when we came together and I heard the glass fall. I saw a lady on the hood of the machine which afterwards proved to be Mrs. Ternes. That was the first I knew there was anybody near. At the time of the collision I was traveling in the center and main traveled track of the road, and I did not turn out of the main track of the road up to that time."

An instruction like the one copied above was given in the former case (*Giles v. Ternes,* 93 Kan. 140, 143 Pac. 491), where it was said, in substance, that if there was evidence that the driver of the car turned to the left of the traveled portion of the road, and ran into the carriage which, to avoid the collision, had been turned to the right and almost into the ditch, the appellant could not be injured by the instruction, and it would be presumed that there was evidence to that effect. In that case the evidence was not presented in this court, but in this case it is, and, as we have seen, it is sufficient to warrant the instruction, as decided in that case.

Instructions that the object of lights upon an automobile is not alone to enable persons approaching to see it, but to enable the driver of the car to see a reasonable distance in the direction in which he is going, were objected to, but they are not erroneous within the principles already decided in the former case.

The Finding No. 1, that the defendant was driving his car in a careful and prudent manner, must, in the light of the general verdict and finding No. 6 that the plaintiff's carriage was turned out of the roadway to the right, be deemed to refer to the control of the car, and not that it was prudent to drive it upon a carriage properly turned aside. It is true that by finding No. 9 the jury said that there was sufficient time and place for the driver of the carriage to have avoided the collision by turning to one side of the road or otherwise, but he was only bound to do what prudence and the law required. It appears from another finding and the verdict that he performed this duty. He had a right to

presume, until the contrary appeared, that the driver of the automobile would yield a part of the roadway as the law also required him to do.

The special findings do not negative the plaintiff's contention that the defendant failed to turn his car to the right but actually turned it to the left, thereby colliding with the plaintiff's carriage which had been properly turned aside. Neither do the findings negative the plaintiff's contention that the lights upon the automobile were insufficient to enable the driver to see a reasonable distance in the direction in which he was going. The general verdict must be construed as finding for the plaintiff on these matters, and being supported by competent evidence, will not be set aside.

It is suggested that while the jury found that the plaintiff's carriage was turned out of the roadway, they did not find that such turn was made at a sufficient distance from the approaching car. It must be presumed from the general verdict that the turn was seasonably made, and the evidence supports that conclusion.

Having considered the various objections to the proceedings, and no error being found, the judgment is affirmed.